**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dusk Leigh Lott, | No. CV-20-01565-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Dusk Leigh Lott's Applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial.[2] The Court has reviewed the briefs, Administrative Record (Doc. 20-3, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 18-33) and affirms the ALJ's decision for the reasons addressed herein.

---

[1] The relevant DIB and SSI regulations in this case are virtually identical, and the Court cites only the DIB regulations in the Order. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900-416.999 and correspond with the last two digits of the DIB citation (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[2] Plaintiff also filed a "Notice of Supplemental Authority" regarding a new case from the Ninth Circuit addressing the Agency's new medical guidelines. (Doc. 36). The Commissioner concurs with the Notice regarding the supplemental authority but opposes the eight pages of analysis that Plaintiff appends to her Notice. (Doc. 37). The Court agrees that a "Notice of Supplemental Authority" is not the proper mechanism by which to expand on a party's briefing after the deadlines have passed and without seeking permission from the Court. Therefore, the Court will not consider the additional arguments presented in the Notice, but it will take notice of the supplemental authority.

**I.     BACKGROUND**

Plaintiff filed applications for DIB and SSI on August 3, 2018, for a period of disability beginning on June 30, 2016. (R. at 18). The ALJ denied her claims on March 19, 2020. (R. at 18-32). On June 5, 2020, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-5). On August 6, 2020, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence is discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of degenerative changes of the spine, knees, non-specific myositis/myalgia, asthma, varicose veins and obesity. (R. at 20-21).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 19, 32). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 24). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with certain function limitations, and concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 25, 31).

**II.    LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.

*Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## II.   ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erroneously rejected Plaintiff's symptom testimony; and (2) whether the ALJ properly considered the

assessment of treating nurse practitioner, Dawn Domenech. (Doc. 26 at 1-2). Plaintiff also requests this Court to remand the case for an award of benefits. (*Id.* at 26-27).

### A. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject the Plaintiff's symptom testimony and the Court should, therefore, remand for an award of benefits. (Doc. 26 at 21-26).

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112.

For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's physical impairments encompassing degenerative changes of the spine, knees, non-specific myositis/myalgia, asthma, varicose veins and obesity. (R. at 20-21). Plaintiff testified that it's very uncomfortable for her to lay down, sit or stand for very long. (Doc. 20-3, R. at 46). She testified that she has shortness of breath when walking and if she walks "from the house to the trash can, I've got to stop and hold on to the trash can for a minute to get my breath to get back to the house." (R. at 50). Plaintiff testified that she does not have much muscle mass, and she must constantly reposition when sitting. (R. at 52). Plaintiff claimed she can sit for ten to 15 minutes before having to stand and she can stand and walk for only five minutes before needing to sit down again. (R. at 52-53). About every 30 minutes, Plaintiff testified she tries to lay down and recline her feet due to swelling. (R. at 53).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence", including her testimony regarding activities of daily living. (R. at 28). The ALJ then cited to specific examples in the record to support his findings. Plaintiff, however, argues the ALJ failed to provide citations to medical records to support the ALJ's position, and further neglected to specify what daily living activities were inconsistent with Plaintiff's symptom testimony. (R. at 25). The Court is not persuaded by Plaintiff's arguments. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons that are supported by the evidence to discount the Plaintiff's symptom testimony.

The ALJ acknowledged in his decision that Plaintiff was afflicted with multiple

impairments, but found they were not as disabling as alleged. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680. With respect to Plaintiff's spine and knees, the ALJ's numerous citations in his decision included references to knee x-rays in July 2016 which showed mild to moderate degenerative changes, and imaging of the Plaintiff's back in July 2017 was unremarkable. (R. at 26, citing 382, 419, 421). Plaintiff underwent injection treatments for knee and ankle pain in August 2017 and continued treatment for knee and back pain and varicose veins in May and August 2018. (*Id.*) The ALJ further noted that in a September 2018 consult, Plaintiff had a slightly reduced range of motion and tenderness in her knee, but she could walk without a limp while bearing her full weight, and she received another knee injection. (*Id.*) The ALJ devoted almost one page of his decision describing further examinations Plaintiff underwent in October and November 2018 which summarily showed that while she complained of "pain from her head to her toes," medical examinations portrayed a different picture — her gait was normal, she could walk without any assistive device, she had normal balance, could hop on either foot, had the ability to bend, was independent in dressing and undressing, getting on and off the examination table and independent of getting in and out of the chair. (*Id.* at 26-27, citing 690-695, 705-710). The ALJ additionally noted that Plaintiff had negative straight leg raise tests, had full 5/5 strength in lower extremities, mild-to-moderate varicosities in both legs, full range of motion of both hips or knees without pain, and was advised to pursue weight management measures and physical therapy. (*Id.* at 27, citing 690-695, 705-710, 715-717). The ALJ also documented that Plaintiff was encouraged to stop smoking, met with a bariatric surgeon for weight monitoring and it was noted in medical treatment notes that Plaintiff was feeling good and doing well and continued to be counseled on weight loss. (*Id.*, citing 865, 867, 881, 893). Although Plaintiff experienced improvements, the ALJ identified and considered all remaining allegations of Plaintiff's pain. Given those allegations, in making his RFC finding the ALJ specified a series of physical restrictions

applicable to Plaintiff within a job setting. The ALJ ultimately found that while Plaintiff could not return to her past relevant work, there were other jobs available that could comply with Plaintiff's needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied his discussion of the medical evidence regarding Plaintiff's physical issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Regarding Plaintiff's mental health impairments, Plaintiff complained she suffers from anxiety disorder, depression and a history of substance abuse. (R. at 21). The ALJ's decision cited to several medical notes from 2016-2018 which showed the Plaintiff experienced intermittent episodes of sobriety and took part in various rehabilitation and residential treatment programs for alcohol and substance use. (*Id.*) The ALJ noted a consultative psychological exam in December 2018 showed that Plaintiff was nine months sober; displayed no significant impairments in memory, concentration, adapting to change or understanding; had normal social interactions during the exam, and maintained normal standards of cleanliness. (R. at 22, citing 722-726). Plaintiff also took part in a Mini Mental Status Exam (MMSE) during the consultation where she obtained a score of 27/30. (R. at 22). Plaintiff stated during the hearing that she had been sober for fourteen months and took medicine for depression and bipolar conditions. (R. at 48, 50). The ALJ remarked in his decision that Plaintiff's mental symptoms stabilized and had improved with treatment compliance and abstention from substance use. (R. at 22). The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be

controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ found that Plaintiff experienced only mild limitations in the areas of understanding, remembering or applying information; interacting with others; concentrating or maintaining pace, and managing oneself. (R. at 23-24). Based upon the evidence, the ALJ found Plaintiff's mental impairments were non-severe. (*Id.*)

In consideration of Plaintiff's daily living activities, the ALJ acknowledged multiple times throughout his decision that Plaintiff's "daily activities suggest a greater level of functioning than alleged." (R. at 29, 30). The ALJ cited that Plaintiff could perform chores that included washing dishes, although Plaintiff testified this task took time to complete; shop in food stores; she was independent with her personal care; she was cooperative during exams, and Plaintiff testified she could sweep or run a vacuum, although painful. (R. at 24, 26, 30, 50). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694.

Additionally, the ALJ noted Plaintiff currently worked in a paid position upwards of fifteen hours per week in a peer support group that assisted others with a similar history of substance use maintain their sobriety. (R. at 24, 26, 30, 54-55). The position required her to attend meetings and Plaintiff testified that a one-day shift could last three or four hours. (R. at 54). Yet, when the ALJ asked Plaintiff how it affects her when she meets new people, Plaintiff answered she has "very, big anxiety for being around people anymore." (R. at 51). However, the very nature of Plaintiff's position seems to entail meeting people and talking with them to give counsel. Moreover, Plaintiff testified that she cannot watch a full movie or read a book because she does "not have the attention span to watch anything for more than like ten minutes." (*Id.*) Later in her testimony, Plaintiff offered that she cannot go to the movies because of constant shifting in her seat and adjusting her sitting

position. (R. at 52). This statement seems to negate that she could not watch movies due to a lack of attention span. If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security). Given the scope of the record, the ALJ properly relied upon objective medical evidence which indicated that Plaintiff's symptoms stabilized with treatment compliance and abstention from substance use, Plaintiff's demeanor and statements during the hearing, and Plaintiff's daily activities to discount Plaintiff's testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that his decision is supported by substantial evidence. Even in cases "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. This Court concludes that the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's claims and those reasons were supported by substantial evidence.

**B. The ALJ properly considered the medical opinion evidence of nurse practitioner Domenech.**

Plaintiff argues next that the ALJ erred in his assessment of nurse practitioner Domenech's opinion. Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will

articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[3]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources. "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502 (d). Specifically, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," and a "Licensed Physician Assistant" are considered acceptable medical sources "for impairments within his or her licensed scope of practice." *Id.* at (a). The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of

---

[3] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

In the present case, Nurse Domenech, Plaintiff's treating nurse practitioner, submitted a check-box questionnaire of Plaintiff's limitations. (R. at 712-714). Nurse Domenech opined that Plaintiff could sit for less than two hours and could stand and/or walk for less than two hours in an eight-hour workday. (R. at 30, 712-714). Nurse Domenech opined that Plaintiff would need to frequently change positions, could rarely lift or carry more than five pounds and could rarely do things such as reach, climb, stoop, or crawl, etc., which led Nurse Domenech to claim that she had a moderately severe limitation for activities due to Plaintiff's fatigue and pain issues. (R. at 30, citing 712-714). The ALJ found these limitations to be inconsistent with the record. The ALJ found the limitations suggested by Nurse Domenech "were overly restrictive and depict an individual that was nearly bedridden" and conflicted with other treatment findings in the record. (R. at 30). The ALJ discussed an examination in November 2018 where it was noted that Plaintiff could walk with a normal gait, had negative straight leg tests, and experienced mild tenderness in her paraspinal muscles. (*Id*.) The ALJ indicated that Plaintiff had full strength in her extremities, did not use an assistive device to walk, and given an option to change position, Plaintiff could stand, walk and sit for a total of eight hours in an eight-hour workday. (*Id*.) Considering the above factors, the ALJ found that Nurse Domenech's opinion lacked support in the record and was unpersuasive.

The ALJ's decision sufficiently articulated the consistency and supportability

factors required by the new regulations and the ALJ cited to specific examples in the medical record that were inconsistent with Nurse Domenech's opinion of Plaintiff's limitations. The ALJ fully articulated how persuasive he found all the medical opinions from each source. It is apparent from the record that the ALJ provided substantial evidence to sufficiently support his decision. Plaintiff's arguments only offer alternative interpretations of the evidence, which are not find persuasive. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### III.   CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence and properly considered the medical evidence of record. Therefore, the ALJ did not err in his decision, which is based on substantial evidence.

**IT IS HEREBY ORDERED** that the decision of the ALJ is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 30th day of September, 2022.

_____
G. Murray Snow
Chief United States District Judge